**No. 24-40756**

IN THE

# United States Court of Appeals
# for the Fifth Circuit

LA UNIÓN DEL PUEBLO ENTERO

*Plaintiff-Appellant,*

v.

FEDERAL EMERGENCY MANAGEMENT AGENCY AND U.S. DEPARTMENT OF HOMELAND SECURITY,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Texas
Case No. 5:21-cv-71
(The Honorable John A. Kazen)

## OPENING BRIEF FOR PLAINTIFF-APPELLANT

Jerome Wesevich
Ana Laurel
TEXAS RIOGRANDE LEGAL AID
1331 Texas Ave.
El Paso, Texas 79901

Jessica L. Ellsworth
Michael J. West
Sam Zwingli
HOGAN LOVELLS US LLP
555 Thirteenth St. NW
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
jessica.ellsworth@hoganlovells.com

April 2, 2025

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

**Number and Style of Case:** No. 24-40756, *La Unión Del Pueblo Entrero v. Federal Emergency Management Agency, et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

- La Unión Del Pueblo Entrero (Plaintiff-Appellant)
- Tania A. Chavez Camacho (LUPE Executive Director)
- Hogan Lovells US LLP (Counsel for Plaintiff-Appellant)
- Jessica Ellsworth (Counsel for Plaintiff-Appellant)
- Michael J. West (Counsel for Plaintiff-Appellant)
- Sam Zwingli (Counsel for Plaintiff-Appellant)
- Texas RioGrande Legal Aid, Inc. (Counsel for Plaintiff-Appellant)
- Jerome Wesevich (Counsel for Plaintiff-Appellant)
- Ana Laurel (Counsel for Plaintiff-Appellant)
- Brittanny Perrigue Gomez (Counsel for Plaintiff-Appellant)
- Hannah Dyal (Counsel for Plaintiff-Appellant)
- Israel Reyna (Counsel for Plaintiff-Appellant)
- Federal Emergency Management Agency (Defendant-Appellee)
- U.S. Department of Homeland Security (Defendant-Appellee)
- Alamdar S. Hamdani (U.S. Attorney)
- Jimmy A. Rodriguez (Counsel for Defendants-Appellees)
- Joseph Macri II (Counsel for Defendants-Appellees)

/s/ Jessica L. Ellsworth
Jessica L. Ellsworth

*Counsel for Plaintiff-Appellant*

i

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a)(2) and Fifth Circuit Rule 28.2.3, Plaintiff-Appellant La Unión Del Pueblo Entrero respectfully requests oral argument. This appeal presents important questions concerning whether and to what extent relief is available under the Freedom of Information Act (FOIA). Among other things, this case concerns the scope of federal courts' jurisdiction to enforce that Act's "reading room" provision, 5 U.S.C. § 552(a)(2). This is an important question of law subject to an acknowledged circuit split. A robust discussion of the issue at oral argument will substantially assist the Court in its consideration of this appeal.

# TABLE OF CONTENTS

Page

STATEMENT OF JURISDICTION ............................................................ 1

STATEMENT OF THE ISSUES ............................................................... 2

INTRODUCTION ...................................................................................... 2

STATEMENT OF THE CASE ................................................................. 6

I.    STATUTORY AND REGULATORY BACKGROUND ............... 6

    A.    FOIA Requires Agencies To Publish Certain
Documents Prior To Use ......................................................... 6

    B.    FEMA Decides Disaster Assistance Applications
Under The Individuals And Households Program ................. 9

II.    Factual And Procedural Background ........................................ 13

    A.    Factual Background ................................................................. 13

    B.    Procedural History ................................................................. 15

SUMMARY OF THE ARGUMENT ........................................................ 24

STANDARD OF REVIEW ....................................................................... 27

ARGUMENT .............................................................................................. 28

I.    FEMA HAS A POLICY OR PRACTICE OF USING
UNPUBLISHED RULES TO DECIDE IHP
APPLICATIONS IN VIOLATION OF
5 U.S.C. § 552(a)(2) ...................................................................... 28

    A.    Prospective Relief Is Warranted Where An
Agency Engages In A Policy Or Practice Of
Violating FOIA ....................................................................... 28

    B.    FEMA Has A Policy Or Practice Of
Violating FOIA ....................................................................... 30

    C.    The District Court Erred In Holding Otherwise ................. 40

## TABLE OF CONTENTS—Continued

Page

II. FOIA'S REMEDIAL PROVISION AUTHORIZES COURTS TO ORDER AGENCIES TO PROACTIVELY POST DOCUMENTS ONLINE ...................... 43

   A. The Text, Structure, And Purpose of FOIA's Remedial Provision Make Clear That District Courts Can Order Agencies To Proactively Post Documents Online ................................................ 45

      1. The Remedial Provision's Text Authorizes Orders Requiring Agencies To Proactively Post Documents Online ............................................ 45

      2. Context Indicates That The Remedial Provision Authorizes Orders Requiring Agencies To Proactively Post Documents Online ............................................ 48

      3. FOIA's Structure Confirms That Courts May Order Agencies To Proactively Post Documents Online ............................................ 49

      4. Concluding That Courts Are Authorized To Order Agencies To Proactively Post Documents Online Is Consistent With FOIA's Purpose ..................... 52

   B. FEMA's Contrary Arguments Are Meritless ........................ 54

III. AN INJUNCTION IS WARRANTED ....................................... 56

   A. LUPE Is Suffering Several Irreparable Injuries That Cannot Be Adequately Remedied At Law ...................... 57

   B. The Balance Of Harms And Public Interest Favor An Injunction ....................................................................... 65

CONCLUSION ....................................................................... 68

# TABLE OF AUTHORITIES

Page(s)

CASES:

*Animal Legal Defense Fund v. United States Dep't of Agric.*,
935 F.3d 858 (9th Cir. 2019) .............................. 7, 23, 43, 47, 48, 50,
51, 54, 55, 58, 62, 66, 67

*Austin v. Kroger Tex., L.P.*,
864 F.3d 326 (5th Cir. 2017) ........................................................ 37

*Barbosa v. DHS*,
263 F. Supp. 3d 207 (D.D.C. 2017) ................................................ 14

*Barbosa v. DHS*,
916 F.3d 1068 (D.C. Cir. 2019) ................................ 4, 14, 31, 39, 61

*Benak ex rel. All. Premier Growth Fund v.
Alliance Cap. Mgmt. L.P.*,
435 F.3d 396 (3d Cir. 2006) ......................................................... 63

*Bennett v. Spear*,
520 U.S. 154 (1997) .................................................................... 48

*Board of Pub. Instruction of Taylor Cnty., Fla. v. Finch*,
414 F.2d 1068 (5th Cir. 1969) ...................................................... 45

*Book People, Inc. v. Wong*,
91 F.4th 318 (5th Cir. 2024) ........................................................ 62

*Brown v. Allen*,
344 U.S. 443 (1953) .................................................................... 33

*Bruesewitz v. Wyeth LLC*,
562 U.S. 223 (2011) .................................................................... 46

*Canadian Standards Ass'n v. P.S. Knight Co., Ltd.*,
112 F.4th 298 (5th Cir. 2024) ...................................................... 28

*Carr v. United States*,
560 U.S. 438 (2010) .................................................................... 46

## TABLE OF AUTHORITIES—Continued

Page(s)

*Church of Scientology of Cal. v. IRS,*
  792 F.2d 153 (D.C. Cir. 1986) ......................................... 34

*Center for Biological Diversity, Inc. v. BP Am. Prod. Co.,*
  704 F.3d 413 (5th Cir. 2013) ........................................... 58

*CIA v. Sims,*
  471 U.S. 159 (1985) ......................................................... 6

*Citizens for Responsibility and Ethics in Washington v. DOJ,*
  846 F.3d 1235 (D.C. Cir. 2017) ...................... 6, 7, 23, 67

*Clarke v. CFTC,*
  74 F.4th 627 (5th Cir. 2023) ...................................... 57, 65

*Department of the Air Force v. Rose,*
  425 U.S. 352 (1976) ....................................................... 53

*DOJ v. Reporters Comm. for Freedom of Press,*
  489 U.S. 749 (1989) .................................................... 6, 54

*eBay Inc. v. MercExchange, L.L.C.,*
  547 U.S. 388 (2006) ....................................................... 56

*Electronic Frontier Found. v. Office of Dir. of Nat. Intel.,*
  No. 07-cv-5278, 2007 WL 4208311
  (N.D. Cal. Nov. 27, 2007) .............................................. 59

*Electronic Priv. Info. Ctr. v. DOJ,*
  416 F. Supp. 2d 30 (D.D.C. 2006) ................................. 59

*Evanston Ins. Co. v. Mid-Continent Cas. Co.,*
  909 F.3d 143 (5th Cir. 2018) .......................................... 27

*Federal Open Mkt. Comm. of the Fed. Reserve System v. Merrill,*
  443 U.S. 340 (1979) ......................................................... 6

*FEC v. Akins,*
  524 U.S. 11 (1998) ......................................................... 58

# TABLE OF AUTHORITIES—Continued

Page(s)

*Food Mktg. Inst. v. Argus Leader Media,*
588 U.S. 427 (2019) .......................................................... 49

*Freeman v. Pitts,*
503 U.S. 467 (1992) .......................................................... 53

*Glass v. Paxton,*
900 F.3d 233 (5th Cir. 2018) ............................................ 44

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,*
484 U.S. 49 (1987) ............................................................ 47

*Hajro v. United States Citizenship & Immigr. Servs.,*
811 F.3d 1086 (9th Cir. 2016) .......................................... 28

*Humane Soc'y of the United States v.*
*United States Fish & Wildlife Service,*
838 F. App'x 721 (4th Cir. 2020) ...................... 26, 54, 55

*Huskey v. Jones,*
45 F.4th 827 (5th Cir. 2022) ............................................. 37

*In re Mirant Corp.,*
378 F.3d 511 (5th Cir. 2004) ............................................ 44

*Janvey v. Alguire,*
647 F.3d 585 (5th Cir. 2011) ...................................... 62, 63

*Judicial Watch, Inc. v. DHS,*
895 F.3d 770 (D.C. Cir. 2018) ................... 28, 29, 32, 35, 38, 39,
40, 41, 62, 64

*Kansas v. Nebraska,*
574 U.S. 445 (2015) .......................................................... 53

*Kennecott Utah Copper Corp. v.*
*United States Dep't of Interior,*
88 F.3d 1191 (D.C. Cir. 1996) .......................................... 55

*Kungys v. United States,*
485 U.S. 759 (1988) .......................................................... 48

## TABLE OF AUTHORITIES—Continued

Page(s)

*Lewis v. Reagan,*
    660 F.2d 124 (5th Cir. 1981) ........................................ 52

*Long v. IRS,*
    693 F.3d 907 (9th Cir. 1982) ........................................ 29

*Louisiana v. Biden,*
    55 F.4th 1017 (5th Cir. 2022).......................................57

*Louisiana Wildlife Federation, Inc. v. York,*
    761 F.2d 1044 (5th Cir. 1985) ...................................... 67

*LUPE v. FEMA,*
    No. 1:08-cv-487, 2017 WL 2539451
    (S.D. Tex. Feb. 15, 2017) ...................................... 14, 31

*Milner v. Department of the Navy,*
    562 U.S. 562 (2011) ..................................................... 45

*New York Legal Assistance Grp. v. Bd. of Immigr. Appeals,*
    987 F.3d 207 (2d Cir. 2021)........................ 23, 43, 46, 48, 49, 50, 51,
    52, 54, 56, 67

*News-Press v. DHS,*
    489 F.3d 1173 (11th Cir. 2007) ................................ 60, 65

*Nken v. Holder,*
    556 U.S. 418 (2009) ..................................................... 57

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975) ....................................................... 3

*Pennsylvania Dep't of Pub. Welfare v. United States,*
    No. 99-175, 2001 U.S. Dist. LEXIS 3492
    (W.D. Pa. Feb. 7, 2001)................................................ 34

*Pierce Cnty., Wash. v. Guillen,*
    537 U.S. 129 (2003) ..................................................... 52

# TABLE OF AUTHORITIES—Continued

Page(s)

*Renegotiation Bd. v. Bannercraft Clothing Co.,*
  415 U.S. 1 (1974) .................................................. 52, 65, 67

*Ridgely v. FEMA,*
  512 F.3d 727 (5th Cir. 2008) ............................... 12, 39, 61

*Riser v. United States Dep't of State,*
  No. 09-cv-3273, 2010 WL 4284925
  (S.D. Tex. Oct. 22, 2010) ............................................ 62

*Schindler Elevator Corp. v. U.S. ex rel. Kirk,*
  563 U.S. 401 (2011) ...................................................... 7

*Seago v. O'Malley,*
  91 F.4th 386 (5th Cir. 2024) ................................... 49, 62

*Sterling Drug, Inc. v. FTC,*
  450 F.2d 698 (D.C. Cir. 1971) ..................................... 66

*Stevens v. HHS,*
  666 F. Supp. 3d 734 (N.D. Ill. 2023) ........................... 59

*Stone v. I.N.S.,*
  514 U.S. 386 (1995) ..................................................... 51

*Studebaker Corp. v. Gittlin,*
  360 F.2d 692 (2d Cir. 1966) ......................................... 57

*United States v. Bari,*
  599 F.3d 176 (2d Cir. 2010) ......................................... 37

*United States v. Oakland Cannabis Buyers' Coop.,*
  532 U.S. 483 (2001) ..................................................... 52

*United States v. W.T. Grant Co.,*
  345 U.S. 629 (1953) ..................................................... 29

*Von Saher v. Norton Simon Museum of Art at Pasadena,*
  592 F.3d 954 (9th Cir. 2010) ....................................... 63

# TABLE OF AUTHORITIES—Continued

Page(s)

STATUTES:

5 U.S.C. § 552(a)(1) ................................................................ 7

5 U.S.C. § 552(a)(2) ................................................ 3, 7, 8, 35

5 U.S.C. § 552(a)(2)(B)-(D) .................................................. 8

5 U.S.C. § 552(a)(3) ............................................................. 51

5 U.S.C. § 552(a)(3)(A) ........................................................ 7

5 U.S.C. § 552(a)(4)(B) .............................. 3, 8, 37, 45, 47, 49, 50

5 U.S.C. § 552(a)(6)(A) ....................................................... 51

42 U.S.C. § 5121 ................................................................... 9

42 U.S.C. § 5122(2) .............................................................. 9

42 U.S.C. § 5148 ................................................................. 39

42 U.S.C. § 5170a ................................................................ 9

42 U.S.C. § 5170b ................................................................ 9

42 U.S.C. § 5174 ............................................................. 9, 13

42 U.S.C. § 5174(b)(1) ..................................................... 9, 10

42 U.S.C. § 5174(c) ............................................................... 9

42 U.S.C. § 5174(c)(2)(B) ................................................... 10

42 U.S.C. § 5174(h)(1) ........................................................ 10

REGULATIONS:

44 C.F.R. § 206.110 ........................................................... 10

44 C.F.R. § 206.112 ........................................................... 10

# TABLE OF AUTHORITIES—Continued

Page(s)

44 C.F.R. § 206.113 .................................................................... 10

44 C.F.R. § 206.115(a)-(b) ......................................................... 39

44 C.F.R. § 206.115(e) ................................................................ 39

44 C.F.R. §§ 206.110-120 ..................................................... 10, 13

54 Fed. Reg. 12,571 (Mar. 28, 1989) ......................................... 9

81 Fed. Reg. 68,442 (Oct. 4, 2016) ........................................... 10

89 Fed. Reg. 3,990 (Mar. 22, 2024) .......................................... 39

89 Fed. Reg. 64,945 (Aug. 8, 2024) .......................................... 36

89 Fed. Reg. 84,923 (Oct. 24, 2024) ......................................... 11

89 Fed. Reg. 97,052 (Dec. 6, 2024) ........................................... 36

RULE:

FED. R. CIV. P. 56(a) ................................................................... 28

LEGISLATIVE MATERIALS:

S. Rep. No. 88-1219, 88th Cong., 2d Sess. (July 22, 1964) ...................... 33

S. Rep. No. 93-854, 93d Cong., 2d Sess. (May 16, 1974) ........................ 51

OTHER AUTHORITIES:

73 Am. Jur. 2d Statutes § 139 .................................................. 46

*And*, Random House Dictionary of the English Language
    (1st ed. 1971) .................................................................... 45

DOJ, Office of Information Policy, *Proactive Disclosure of
    Non-Exempt Agency Information*
    (updated Oct. 26, 2022) ...................................................... 66

*Enjoin*, Black's Law Dictionary (4th ed. rev. 1968) ................ 47

## TABLE OF AUTHORITIES—Continued

Page(s)

FEMA, *FEMA Frequently Requested Records*,
(last visited April 2, 2025) ................................................. 19, 36, 37

FEMA, *Individual Assistance Program and Policy
Guide* (May 2021) ............................................................. 13

GAO, Report No. 20-503, *Additional Actions Needed to
Strengthen FEMA's IHP* (Sept. 2020) ............................. 13

Press Release, *President Joseph R. Biden, Jr. Approves
Major Disaster Declaration for California*, FEMA,
HQ-25-08 (Jan. 8, 2025) ................................................... 36

Zach Schonfeld, The Hill, *Florida Alleges FEMA Officials
Conspired To Discriminate Against Trump Supporters
After Hurricane*, The Hill (Nov. 14, 2024) ...................... 60

*Withhold*, Random House Dictionary of the English
Language (1st ed. 1971) ................................................... 46

*Withhold*, Webster's Third New International
Dictionary (1971 ed.) ....................................................... 46

No. 24-40756

IN THE
# United States Court of Appeals
## for the Fifth Circuit

LA UNIÓN DEL PUEBLO ENTERO
*Plaintiff-Appellant,*

v.

FEDERAL EMERGENCY MANAGEMENT AGENCY AND U.S. DEPARTMENT OF
HOMELAND SECURITY,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Texas
Case No. 5:21-cv-71
(The Honorable John A. Kazen)

**OPENING BRIEF FOR PLAINTIFF-APPELLANT**

**STATEMENT OF JURISDICTION**

La Unión Del Pueblo Entero (LUPE) invoked the District Court's jurisdiction under 28 U.S.C. § 1331.  On September 23, 2024, the District Court held that it had subject-matter jurisdiction, granted summary judgment to FEMA, and denied LUPE's cross-motion for summary judgment.  ROA.16206-24.  LUPE filed its notice of appeal on November

19, 2024. ROA.16225. This appeal is timely pursuant to Federal Rule of Appellate Procedure 4(a)(1)(B). This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.    Whether FEMA engages in a policy or practice of refusing to publish and index the rules it uses when evaluating applications for disaster assistance, in violation of 5 U.S.C. § 552(a)(2).

2.    Whether 5 U.S.C. § 552(a)(4)(B) authorizes courts to enjoin agencies as necessary to secure proactive publication of agency rules as required by 5 U.S.C. § 552(a)(2).

3.    Whether there is no triable fact as to the need for an injunction to prevent FEMA's further use of unpublished rules to decide applications for disaster assistance.

## INTRODUCTION

The Federal Emergency Management Agency (FEMA) uses undisclosed rules to determine the amount of disaster assistance that FEMA provides through its Individuals and Households Program (IHP). FEMA's refusal to publish this information violates the Freedom of Information Act (FOIA). Plaintiff-Appellant La Unión Del Pueblo Entero

(LUPE) filed suit seeking an injunction to secure FEMA's proactive publication of these documents as the agency is required to do by FOIA's plain text.

FOIA "represents a strong congressional aversion to secret agency law." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975) (quotation marks and brackets omitted). "Secret laws" include agency rules, interpretations, policy statements, or manuals that affect how an agency treats a member of the public without being made publicly available prior to use. FOIA's "reading room" provision, 5 U.S.C. § 552(a)(2), prevents agency use of secret law by requiring agencies to electronically publish and index all "statements of policy and interpretations which have been adopted by the agency," as well any "administrative staff manuals and instructions to staff that affect a member of the public." 5 U.S.C. § 552(a)(2). FOIA vests federal courts with jurisdiction to enjoin agencies from withholding information that FOIA requires to be disclosed. *Id.* § 552(a)(4)(B).

LUPE helps low-income communities in Texas obtain IHP assistance. LUPE has long suspected that FEMA uses secret rules to determine eligibility for IHP assistance. After all, FEMA's published

rules and guidance do not enable anyone to discern how FEMA makes its decisions. LUPE has accordingly pressed FEMA—for nearly two decades now—to abide by its FOIA obligations.

FEMA has staunchly resisted doing so. In an earlier suit, FEMA represented to a federal Court of Appeals that it has "no objection to complying with *specific* requests for documents" under FOIA. *Barbosa v. DHS*, 916 F.3d 1068, 1074 (D.C. Cir. 2019). And yet, when LUPE submitted sixteen FOIA requests for the IHP rules FEMA used during sixteen subsequent disasters, FEMA failed to substantively respond to any of them.

LUPE initiated this suit after FEMA failed to respond to its request under Section 552(a)(2) to publish online the documents it uses to determine IHP eligibility. And the evidence developed in this case shows that FEMA has a longstanding policy of using secret rules that should have already been posted online under Section 552(a)(2). The agency's practice of deciding IHP applications according to secret rules harms disaster survivors, whose applications are often denied with little-to-no explanation. Worse yet, FEMA's secret rules hamstring survivors who try to appeal their denials. Despite not knowing why FEMA denied relief

or how FEMA came to that conclusion, disaster survivors must explain why FEMA's initial denial was wrong. Put simply, FEMA secret rules keep the public in the dark—the opposite of what FOIA requires.

FOIA authorizes a remedy to stop this sort of incalcitrant conduct: an injunction mandating FEMA proactively post documents to its website. That is what should have happened here. Yet the District Court declined to do so after concluding that LUPE failed to show a triable fact on whether FEMA engaged in a "policy or practice" of violating FOIA. On *de novo* review of the same record, this Court should come to the opposite conclusion.

This Court should also reject FEMA's position that courts lack authority under FOIA's remedial provision to issue prospective injunctions requiring the agency to post documents online. In FEMA's view, courts cannot order agencies to post documents online; the most a court can do to remedy a Section 552(a)(2) violation is to order the agency to produce documents to the requester. That is wrong. This important issue has divided the D.C., Second, and Ninth Circuits and was fully briefed below, multiple times. Although the District Court declined to reach this question, it tipped its hand by stating that it found

"persuasive" the cases holding that FOIA authorizes courts to order agencies to post documents online. In addition to reversing the District Court's policy-or-practice holding, this Court should hold that FOIA authorizes the relief LUPE seeks. And for similar reasons, this Court should also conclude that LUPE has shown as a matter of law that it is entitled to such relief.

## STATEMENT OF THE CASE

## I.     STATUTORY AND REGULATORY BACKGROUND

### A.     FOIA Requires Agencies To Publish Certain Documents Prior To Use.

Congress enacted FOIA to "assure that the Government would not operate behind a veil of secrecy." *CIA v. Sims*, 471 U.S. 159, 182 (1985). Concerned with agencies' use of so-called "secret law," *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 772 n.20 (1989), Congress designed FOIA to effectuate its "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Federal Open Mkt. Comm. of the Fed. Reserve System v. Merrill*, 443 U.S. 340, 351–352 (1979). (citation omitted).

"FOIA imposes on federal agencies both reactive and affirmative obligations to make information available to the public." *Citizens for*

*Responsibility and Ethics in Washington v. DOJ*, 846 F.3d 1235, 1240 (D.C. Cir. 2017) (*CREW*). In the "reactive" category, 5 U.S.C. § 552(a)(3)(A) requires agencies to "make … records promptly available" in response to specific requests.

In the "affirmative" category, two FOIA provisions "requir[e] agencies to release some records even absent a request." *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 414 (2011). Those provisions are 5 U.S.C. § 552(a)(1) and (a)(2). Section 552(a)(1) requires all agencies to proactively publish their "substantive rules of general applicability" and "statements of general policy or interpretations of general applicability formulated and adopted by the agency" in the Federal Register. 5 U.S.C. § 552(a)(1).

This case concerns the other affirmative-disclosure provision, Section 552(a)(2). Known as the "reading room provision," this provision directs agencies to proactively make other documents "available for public inspection in an electronic format." *Id.* § 552(a)(2); *see Animal Legal Defense Fund v. United States Dep't of Agric.*, 935 F.3d 858, 862 (9th Cir. 2019) (*ALDF*) (explaining that Section 552(a)(2) requires agencies to "proactively disclose" records). The documents that must be

made available include "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register," "administrative staff manuals and instructions to staff that affect a member of the public," and documents subject to repeated requests under Section 552(a)(3). *Id.* § 552(a)(2)(B)-(D). Agencies must also "make available for public inspection in an electronic format current indexes providing identifying information for the public" as to published documents. *Id.* § 552(a)(2). Under Section 552(a)(2), if a "statement of policy, interpretation, or staff manual or instruction that affects a member of the public" is not "indexed and either made available [on a website] or published," it may not be "relied on, used, or cited as precedent by an agency against a party other than an agency." *Id.*[1]

If agencies fail to comply with their disclosure obligations, FOIA provides a private cause of action to obtain disclosure. Under 5 U.S.C. § 552(a)(4)(B), district courts "ha[ve] jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."

---

[1] The one exception to the rule barring pre-publication use is if "the party has actual and timely notice of the terms thereof." 5 U.S.C. § 552(a)(2).

## B. FEMA Decides Disaster Assistance Applications Under The Individuals And Households Program.

The Robert T. Stafford Disaster Relief and Emergency Assistance Act (Stafford Act) empowers the President to provide aid, assistance, and emergency services upon declaring a "major disaster." 42 U.S.C. §§ 5121, 5170a, 5170b. "Major disasters" include any "natural catastrophe," fire, flood, or explosion which the President determines is "of sufficient severity and magnitude to warrant major disaster assistance." *Id.* § 5122(2). The President has delegated most of his Stafford Act authority to FEMA. *Delegation of Disaster Relief and Emergency Assistance Functions*, 54 Fed. Reg. 12,571 (Mar. 28, 1989).

In 2000, Congress amended the Stafford Act to establish the Individuals and Households Program (IHP). *See* Disaster Mitigation Act of 2000, Pub. L. No. 106-390, § 206, 114 Stat. 1552 (Oct. 30, 2000), *codified at* 42 U.S.C. § 5174. The IHP empowers the President (and thereby FEMA) to provide direct "financial assistance" to individuals with "disaster-related housing needs" following a major disaster. 42 U.S.C. §§ 5174(b)(1), (c). IHP assistance includes funds for temporary housing, repairs or replacement of owner-occupied private residences, and permanent housing construction. *Id.* § 5174(c). The statute deems

9

disaster survivors eligible for housing assistance if they were "displaced from their predisaster primary residence" or if that predisaster primary residence was rendered "uninhabitable" or "inaccessible" because of damage caused by the major disaster. *Id.* § 5174(b)(1).

Congress directed FEMA to promulgate additional rules to govern eligibility for IHP assistance. *Id.* § 5174(j). FEMA has issued regulations on the registration period for aid, 44 C.F.R. § 206.112; the amount and type of assistance available, *id.* § 206.110; and the eligibility requirements for disaster victims, *id.* § 206.113. *See also* 81 Fed. Reg. 68,442 (Oct. 4, 2016) ("Unified Guidance" for the IHP program). These materials only state who "may" be eligible for assistance, without disclosing the standards that FEMA uses to decide who is eligible for what amount of assistance. *See* 44 C.F.R. §§ 206.110-120 ("may" qualification appears 74 times).

IHP is available for uninsured losses up to $43,600 adjusted for inflation, regardless of family income. 42 U.S.C. §§ 5174(c)(2)(B), (h)(1). This adds up to massive expenditures every year. FEMA provided $32 billion in IHP assistance following at least 562 major disasters between October 2020 and January 2024. ROA.15977-78.

The process for obtaining IHP assistance is "Kafkaesque." *Association of Cmty. Orgs. for Reform Now (ACORN) v. FEMA*, 463 F. Supp. 2d 26, 35 (D.D.C. 2006). The process begins when a disaster survivor whose home was damaged by a disaster applies for IHP assistance. ROA.16144-50. FEMA then sends an inspector—usually a private contractor—to evaluate the damage. ROA.16030-31. Inspectors input their findings into FEMA software, which then applies the agency's eligibility rules to the inspector's damage data, and automatically issues a decision letter. ROA.5063-64, 11910, 15272-469.

Decision letters concerning home repair come in two basic forms. An "Eligible— Housing Assistance —for Home Repair" letter informs applicants that they are eligible for assistance ranging from $50 to $43,600. ROA.5281-83; *see also* 42 U.S.C. § 5174(h)(1); 89 Fed. Reg. 84,923, 84,924 (Oct. 24, 2024). This letter does not provide any information about how FEMA calculated the amount of assistance allowed, or what criteria or standards FEMA relied upon to decide on that precise amount. ROA.5281-83, 16040. "Assistance Not Approved" letters only inform applicants that a "FEMA inspection [] determined that the disaster has not caused your home to be unsafe to live in."

ROA.5284-85, 15059-60, 16042-47.

Neither letter explains the basis for the agency's decision. Reasons why FEMA may deny assistance or lowball the survivor include the inspector: not observing the damage, ROA.15071; not recording observed damage as disaster-related, ROA. 10619; concluding the disaster-related damage did not render the home unsafe, ROA.15269-71; and concluding that the disaster-related damage that caused the home to be unsafe was under the $50 threshold, ROA.13758.

Individuals denied assistance are entitled to appeal the denial within 60 days after notification of the denial. 44 C.F.R. § 206.115(a). Despite not knowing the basis for their denial, applicants must "include a written explanation or verifiable documentation for the appeal," explaining why FEMA's decision was wrong, and provide supporting documentation. *Id.*; ROA.279, 428, 12987-88, 15051-52.

This Court and Congress's General Accounting Office have both criticized FEMA's lack of public IHP guidance. *See Ridgely v. FEMA*, 512 F.3d 727, 741 (5th Cir. 2008) ("FEMA could measurably improve the navigability of its processes by providing applicants with more understandable explanations of its ineligibility determinations" and

"urg[ing] FEMA" to do so "at the earliest possible opportunity"); GAO, Report No. 20-503, *Additional Actions Needed to Strengthen FEMA's IHP* (Sept. 2020) ("FEMA could better explain its program information and eligibility decisions to applicants.").[2]

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

LUPE helps low-income communities in Texas access to IHP assistance following natural disasters.  ROA.15948-50.  After Hurricane Dolly hit in 2008, LUPE learned that FEMA used unpublished rules and guidance to decide which applicants received disaster assistance and in what amount.  ROA.15957.  Given that FEMA's published rules and regulations are general and provide little practical guidance, this was unsurprising.  *See* 42 U.S.C § 5174; 44 C.F.R. §§ 206.110-120; FEMA, *Individual Assistance Program and Policy Guide* (May 2021).[3]

LUPE initially sued FEMA in 2008 arguing, as relevant here, that FEMA violated Section 552(a)(1) by using "an unpublished 'deferred-maintenance' rule to decide which homes were damaged by the

---

[2] *Available at* https://perma.cc/7REQ-SQWG.

[3] *Available at* https://perma.cc/K2J8-9VUT.

hurricane." *LUPE v. FEMA*, No. 1:08-cv-487, 2017 WL 2539451, at *3 (S.D. Tex. Feb. 15, 2017). After nearly ten years of litigation, the District Court agreed with LUPE and held that FEMA had violated FOIA by using an unpublished rule. *See id.* at *5. Put simply, in that case FEMA used secret law to deny relief to roughly 7,500 families in the counties served by LUPE. *See id.* The court vacated FEMA's rule. *See id.* at *2.

LUPE brought another Section 552(a)(1) challenge against FEMA after a series of devastating storms hit Texas in late 2015 and early 2016. *See Barbosa v. DHS*, 263 F. Supp. 3d 207, 210 (D.D.C. 2017). As relevant here, LUPE and a group of individual plaintiffs alleged that FEMA violated Section 552(a)(1) by "rel[ying] on 'secret rules' in non-public documents to deny their IHP applications." *Id.* at 211. The D.C. Circuit ultimately held that that under circuit precedent, Section 552(a)(1) "cannot be enforced by a judicial mandate to publish materials in the Federal Register." *Barbosa*, 916 F.3d at 1073-74 (D.C. Cir. 2019).

Despite denying relief, the D.C. Circuit expressed that it was "not … unmoved by the contentions that 'secret law' was being used" in addition to FEMA's published regulations. *Id.* at 1074. The court was thus "encouraged" by FEMA's assurances that other means remained

available for LUPE to obtain this information. *Id.* "At oral argument," for example, "counsel for FEMA stated repeatedly that the agency would have no objection to complying with *specific* requests for documents so that the allegedly 'secret law' can be brought to light." *Id.* The D.C. Circuit accordingly concluded that LUPE may obtain the information it was seeking "by making FOIA requests under 5 U.S.C. § 552(a)(3)." *Id.*

## B.  Procedural History

LUPE followed the D.C. Circuit's instruction and submitted FOIA requests under Section 552(a)(3). From August 2020 through March 2021, LUPE sent FEMA sixteen FOIA requests seeking documents related to the unpublished IHP standards it used during sixteen different disasters. ROA.15976, 15979-16026. FEMA provided no substantive response to any of these requests. ROA.15977.

In October 2020, LUPE sent a demand letter to FEMA describing the agency's responsibility to proactively post its IHP guidance and standards to an electronic reading room under Section 552(a)(2). ROA.16027-16029. In May 2021, after FEMA had failed to respond, LUPE submitted a formal FOIA request under Section 552(a)(2).

ROA.31-33. LUPE asked FEMA to "make publicly available in its online electronic reading room" the following information:

> a.    all records that communicate to any FEMA employee or to any FEMA contractor (including subcontractors) any substantive or procedural standard that is or will be used by FEMA, FEMA employees, FEMA contractors, or FEMA subcontractors to help decide any application for assistance under the Individuals and Households Program ("IHP") established in 42 U.S.C. § 5174 following a disaster declared after January 1, 2019; and

> b.    all records that state any future change to any existing substantive or procedural IHP standard described above, regardless of whether the change is disaster-specific or applies to all future disasters.

ROA.31. FEMA again offered no substantive response and ignored LUPE's request for a date by which FEMA would respond. ROA.34-39.

After FEMA failed to respond to LUPE's request within the statutorily mandated time, LUPE filed suit in the United States District Court for the Southern District of Texas. ROA.1, 16280. As relevant here, LUPE alleged that FEMA was violating Section 552(a)(2) by "us[ing] unpublished substantive and procedural eligibility standards to decide applications for IHP assistance" without making those standards "affirmatively" available on the agency's website. ROA.28. LUPE sought declaratory relief and an injunction "order[ing] that FEMA timely

produce the complete administrative record showing all documents that FEMA relies upon to defend its actions challenged in this lawsuit" and an injunction ordering FEMA "to make all of their substantive and procedural IHP eligibility standards used at any time after January 21, 2019—including all future standards—publicly available in an electronic reading room, and to do so without further request." ROA.29-30.[4]

Fourteen months after LUPE filed its complaint, FEMA produced what it claimed were the responsive documents. This production consisted of 4,350 pages of rules, half of which FEMA had thoroughly redacted. ROA.172-4543. However, in a declaration, FEMA admitted that it also uses "internal guidance documents, such as the Processing Procedure Manual (PPM) and inspection guidelines" that are "not made available to the public." ROA.4617. According to FEMA, these documents ensure that "policy changes are consistently implemented" and "consist of step-by-step instructions for navigating internal processes and controls." *Id.*

---

[4] LUPE also brought claims under the Administrative Procedure Act (APA). ROA.28-29. These claims were dismissed below, ROA.5584-93, and are not at issue here.

FEMA sought dismissal or summary judgment. *See* ROA.4554-73. FEMA argued that it had sufficiently responded to LUPE's request and that FOIA's remedial provision, Section 552(a)(4)(B), does not authorize courts to order an agency to post documents online or to issue prospective injunctions requiring agencies to post documents to electronic reading rooms.

The District Court denied FEMA's motion in relevant part. *See* ROA.5584-93. The court concluded that there remained "a genuine dispute of material fact over the adequacy of FEMA's search." ROA.5585. The court also held "that FOIA authorizes prospective injunctive relief as a remedy." ROA.5591. But it deferred ruling on whether the remedial provision authorizes courts to order agencies to post documents online and "whether a prospective injunction can enforce the reading room requirement." *Id.*

Concluding that "[t]his case has languished long enough," the District Court entered a "Docket Control Order" "[t]o facilitate an expedient resolution to this protracted matter." ROA.5593. Under this order, the court directed FEMA to "search for responsive records generated between" the cut-off dates of "January 1, 2019, and January

19, 2022." ROA.5735-5736.[5] As for documents generated after January 19, 2022, the court directed the parties to attempt to mediate, and failing mediation, the court would decide FEMA's obligations as to future documents on summary judgment with an evidentiary hearing if necessary. ROA.5592, 5596, 5736.

FEMA's new search uncovered an additional 6,000 pages of additional rules. *See* ROA.5862-12093. FEMA also removed almost all of the redactions in its original production, ROA.12235-15876, and produced an index, ROA.16162-16165. FEMA posted these documents to an electronic reading room. ROA.15894; *see also* FEMA, *FEMA Frequently Requested Records*, https://www.dhs.gov/publication/fema-records (last visited Apr. 2, 2025).

The 10,602 pages of rules FEMA ultimately produced are disorganized, and FEMA's index provided little guidance to a member of the public attempting to use these documents. These documents did, however, make clear that FEMA relied on unpublished rules to determine IHP eligibility between 2019 and 2022. Examples include:

---

[5] The District Court chose the starting date based on LUPE's FOIA request and the ending date based on when "FEMA's disclosure branch sent a search-tasking email." ROA.5736.

- "Standard Operating Procedures" that set forth standards used to make IHP decisions, *e.g.*, ROA.13758, 14600;

- "Inspection Guidelines" that set forth disaster-specific procedures for how inspectors are to gather the data that FEMA uses to decide amounts of IHP assistance, *e.g.,* ROA.972-1383;

- "Line Items" that set forth disaster-specific unit prices and limits for each type of home repair, *e.g.,* ROA.5865-10071;

- Numbered "FEMA Policy" statements setting forth FEMA agency-wide directives, *e.g.,* ROA.3410, 3635-39, 12090-93;

- "Memoranda" setting forth disaster-specific standards, *e.g.,* ROA.3317-3641;

- "Pre-Shift Instructions" that communicate daily updates to field inspectors, including what repairs will be allowed for that disaster, *e.g.,* ROA.15470-876; and

- "Inspector Trainings" detailing inspection methods, *e.g.,* ROA.10157-607.[6]

These rules apply either to every disaster or to specific disasters only. FEMA also admitted in prior litigation that it uses disaster-specific rules. *See* ROA.16332-16333 ("[F]or each disaster, we have, like, literal changes to that standard [manual], and that is just different for every disaster"); ROA.16379-16380 ("[W]hat's needed for—what's needed for a

---

[6] The parties agreed that FEMA had conducted an adequate search for the rules it used between January 1, 2019, and January 19, 2022. ROA.5851, 15885.

tornado in Texas, is different for a tornado in California, so the eligibility requirements are different.").

LUPE and FEMA agreed that mediation on the documents created after January 2022 would be unproductive without a ruling on the scope of remedial jurisdiction under Section 552(a)(4)(B). ROA.15877-78, 16457. FEMA filed a second motion to dismiss or, in the alternative, a motion for summary judgment. *See* ROA.15887-15909. FEMA argued that its 10,602-page response to LUPE's FOIA request mooted the case and that the District Court "should not enter a prospective injunction concerning future documents." ROA.15897. LUPE took the opposite view. LUPE cross-moved for summary judgment, arguing that the court had authority to issue the requested relief and that FEMA's 10,602-page production proved as a matter of law that such relief is warranted. *See* ROA.15910-15946.

The District Court ruled for FEMA. *See* ROA.16206-23. The court concluded that "[w]ith respect to the requested records"—that is, the records used between January 2019 and January 2022—"LUPE's FOIA claim is moot." ROA.16214. The court rejected LUPE's argument that FEMA's index flunked Section 552(a)(2); in the court's view, it was

enough that the index "was publicly accessible in electronic form" and "categorizes documents by type and provides a brief, descriptive title." ROA.16215.

The court then turned to LUPE's request for an injunction ordering FEMA to post online "all future standards." ROA.16218 (emphasis omitted). The District Court styled this aspect of LUPE's request a "policy-or-practice claim." *Id.* The court recognized that this Circuit "has yet to recognize the validity" of such a claim, and so looked to the D.C. Circuit for the relevant standards. ROA.16218-19. Boiled down, that Circuit holds that courts can issue prospective injunctions when "there exists some cognizable danger of recurrent violation." ROA.16219 (emphasis omitted).

The District Court concluded that such a danger was lacking here. The court acknowledged that "FEMA has violated FOIA," that "there was a delay in this case," and that LUPE had "point[ed] to many instances of misbehavior." ROA.16229. But the court credited FEMA's commitment "to reviewing future documents as they are created." ROA.16219. And the court concluded that "the delay in this case was unconnected to other incidents in which FEMA violated FOIA." ROA.16220. The court

accordingly concluded that LUPE "failed to establish that FEMA has a policy or practice of violating FOIA," granted FEMA's "motion for summary judgment on LUPE's request for prospective injunctive relief under 5 U.S.C. § 552(a)(4)(B)," and denied LUPE's motion for summary judgment. ROA.16218, 16220, 16222.

The District Court declined to address whether FOIA's remedial provision authorizes it "to issue a prospective injunction ordering FEMA to post documents in an online reading room in the future." ROA.16221. The court explained that "neither the Supreme Court nor the Fifth Circuit has addressed this issue," and that "[o]ther U.S. Courts of Appeals are split on the question." *Id.* (citing *CREW*, 846 F.3d at 1244 (D.C. Cir.); *ALDF*, 935 F.3d at 877 (9th Cir.); *New York Legal Assistance Grp. v. Bd. of Immigr. Appeals*, 987 F.3d 207, 215 (2d Cir. 2021) (*NYLAG*)). The court indicated that it agreed with the circuits concluding that courts *do* have such authority. *See* ROA.16221 n.6. But the court "decline[d] to consider this issue" in light of its conclusion that "LUPE failed to" "lodg[e] a successful policy-or-practice claim." ROA.16221. The court held that that same holding resolved LUPE's motion for summary judgment on the remaining injunction factors. *See* ROA.16221-22.

This appeal follows.

## SUMMARY OF THE ARGUMENT

**I.** FEMA has a policy or practice of using unpublished rules when deciding IHP applications, in violation of 5 U.S.C. § 552(a)(2). FEMA has admitted to relying on using unpublished IHP documents. Its production of more than 10,600 pages of documents in this litigation demonstrates that it relies on documents that should have been publicly available prior to their use, per Section 552(a)(2). And FEMA's delay in this case builds off its previous refusals to release or publish IHP documents.

The risk that FEMA will continue flouting Section 552(a)(2) absent an injunction is substantial. The agency's 10,602-page production is a disorganized stew, and the statutorily required index FEMA developed is so cursory as to be useless. FEMA has also not consistently published new rules to its website since 2022—even though there have been several major disasters since then, and FEMA admits that it uses incident-specific rules following each disaster. FEMA is thus still not complying with Section 552(a)(2). FEMA's pledge that it will comply with FOIA moving forward is conclusory and unsupported by the record. Finally, the public is harmed by FEMA's policy of non-publication because

24

applicants are forced to appeal FEMA's decision without knowing the relevant standards or rules.

The District Court erred in holding otherwise. The court leaned on FEMA's inadequate pledge. It misunderstood LUPE's agreement that FEMA's 2019-2022 production was adequate—for those years alone. It relied on a presumption that FEMA abides by the law, despite the evidence overcoming that presumption. And the court considered FEMA's many violations of FOIA as "unconnected," despite these violations involving the same subject matter.

**II.**   If this Court reverses the District Court's policy-or-practice holding, it should also conclude that the District Court has jurisdiction to enter a prospective injunction ordering FEMA to post IHP documents to its online reading room on an ongoing basis. Such an injunction is authorized by the plain text of FOIA's remedial provision, Section 552(a)(4)(B). That provision authorizes courts "to enjoin the agency from withholding agency records," language that plainly covers LUPE's requested relief. FOIA's structure confirms this: If Section 552(a)(4)(B) did *not* authorize such relief, then the remedy for a Section 552(a)(2) violation would be the same as for a Section 552(a)(3) violation, despite

each provision serving markedly different functions in the statutory scheme. Finally, such relief is consistent with courts' broad equitable power and FOIA's purpose of preventing use of secret law.

The contrary arguments FEMA offered below are meritless. FEMA urged the District Court to hold that the remedial provision does not authorize this type of relief, as the D.C. Circuit held in *CREW*. But as the Second and Ninth Circuits have recognized, CREW is unpersuasive: It summarily applied circuit precedent concerning a different FOIA provision and that did not analyze the relevant text. FEMA also argued that the District Court should adopt the Fourth Circuit's holding in *Humane Society of the United States v. United States Fish & Wildlife Service*, 838 F. App'x 721 (4th Cir. 2020) (per curiam), that an injunction cannot cover documents that are not yet created. But that unpublished, per curiam decision did not analyze the text at issue here, misread the Ninth Circuit's decision in *ALDF*, and clashes with the Second Circuit's decision in *NYLAG*.

**III.** Finally, if this Court rules for LUPE on the first two issues, it should also conclude that there is no genuine dispute that LUPE will suffer irreparable harm that cannot be adequately remedied at law and

that the balance of the equities and the public interest favor an injunction. FEMA's ongoing violation of Section 552(a)(2) irreparably injures LUPE in multiple ways: by depriving it of needed information to assist its members impacted by disasters obtain relief, hamstringing its efforts to engage in matters of broad public concern, hindering its ability to help its members appeal denials of IHP assistance, and forcing it to engage in costly and time-consuming litigation to obtain information that should already be publicly available. There are no adequate remedies for these injuries at law. FEMA, in contrast, has never argued that it will be harmed by an injunction. Finally, the public has a strong interest in ensuring that FEMA follows the law, fairly distributes IHP assistance, and does not operate under secret law.

## STANDARD OF REVIEW

This Court reviews district court rulings on cross-motions for summary judgment *de novo*, "constru[ing] all evidence and inferences in favor of the non-moving parties." *Evanston Ins. Co. v. Mid-Continent Cas. Co.*, 909 F.3d 143, 146 (5th Cir. 2018). This Court "examine[s] each party's motion independently." *Canadian Standards Ass'n v. P.S. Knight Co., Ltd.*, 112 F.4th 298, 302 (5th Cir. 2024) (quotation marks omitted).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)).

## ARGUMENT

### I.    FEMA HAS A POLICY OR PRACTICE OF USING UNPUBLISHED RULES TO DECIDE IHP APPLICATIONS IN VIOLATION OF 5 U.S.C. § 552(a)(2).

#### A.    Prospective Relief Is Warranted Where An Agency Engages In A Policy Or Practice Of Violating FOIA.

Claims that an agency "has a policy or practice of ignoring FOIA's requirements" are redressable under FOIA. *Judicial Watch, Inc. v. DHS*, 895 F.3d 770, 780 (D.C. Cir. 2018); *see also, e.g., Hajro v. United States Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1103 (9th Cir. 2016).  A policy or practice exists where there is an unexplained and "persistent failure to adhere to FOIA's requirements" in a way that interferes with the plaintiff's "right under FOIA to promptly obtain non-exempt records from the agency in the future." *Judicial Watch*, 895 F.3d at 780.  Such a policy or practice can be "informal." *Payne Enters. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988).  But it must be more than "merely isolated mistakes by agency officials." *Id.*

To enjoin an illegal policy or practice, a court must determine that "there exists some cognizable danger of recurrent violation." *Judicial Watch*, 895 F.3d at 783 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)) (and collecting cases). Relevant factors include "the *bona fides* of the expressed intent to comply, the effectiveness of the discontinuance [of the violation] and, in some cases, the character of the past violations." *Id.* (quoting *W.T. Grant.*, 345 U.S. at 633). "In the FOIA context, 'the court's prime consideration should be the effect on the public of disclosure or non-disclosure.' " *Id.* (quoting *Long v. IRS*, 693 F.3d 907, 909 (9th Cir. 1982)).

*Judicial Watch* is illustrative. There, the plaintiff had "submitted nineteen FOIA requests to the Secret Service for records on public expenditures for travel by" certain people. 895 F.3d at 776. The Secret Service took no substantive action on these requests. *Id.* The plaintiff then sued, alleging that the Secret Service "regularly fails" to respond to its requests. *Id.* (emphasis omitted). For support, the plaintiff "cit[ed] the five lawsuits it had filed against the Secret Service in similar circumstances to obtain similar records." *Id.* The D.C. Circuit easily concluded that this constituted a policy or practice, at least at the Rule

12(b)(6) stage: "Judicial Watch's complaint reflects that it has repeatedly been confronted with prolonged, unexplained delays by the same agency with regard to the same type of records and that six nearly identical lawsuits have not produced any change in the Secret Service's response to its proper requests." *Id.* at 780. The D.C. Circuit then remanded to the district court to determine whether an injunction was warranted. *See id.* at 783-784.

### B.    FEMA Has A Policy Or Practice Of Violating FOIA.

There is no genuine dispute that FEMA has a policy or practice of violating Section 552(a)(2) or that FEMA will adhere to that practice absent an injunction.

At the threshold, even the District Court recognized that "FEMA has violated FOIA." ROA.16220. As the court explained, "FEMA admits to relying on unreleased IHP documents." ROA.16217. FEMA represented in a declaration that the agency does not publish certain "internal guidance documents" that "are necessary to ensure eligibility determinations are made consistently with policy and internal controls." ROA.4618. And FEMA's publication of a 10,602-page set of standards used between 2019 and 2022 establishes that FEMA relied on

unpublished documents to decide assistance following dozens of disasters during that timeframe.  Because Section 552(a)(2) forbids the "use" of agency standards prior to publication, *every pre-publication use* of those standards violated FOIA.  At the least—to quote FEMA—"FEMA concedes that there was a delay in responding to LUPE's FOIA request." ROA.16176.

FEMA's conduct in response to LUPE's Section 552(a)(2) request is of a piece with its years-long history of refusing to publish or release its IHP rules in violation of FOIA.  In 2008, FEMA violated Section 552(a)(1) by using an unpublished deferred-maintenance rule when deciding IHP applications.  *See LUPE v. FEMA*, 2017 WL 2539451, at \*5; *supra* pp. 13-14.  FEMA conceded below that this case and that one involve "many of the same issues."  ROA.4555-56.  FEMA also refused to substantively respond to *any* of LUPE's sixteen Section 552(a)(3) requests for sixteen distinct disasters—despite representing to the D.C. Circuit that it "would have no objection to complying" with such requests, *Barbosa*, 916 F.3d at 1074.  *See supra* pp. 15-18.

In short, regardless of the specific FOIA provision LUPE invoked, FEMA's response was the same: stonewall.  Like other plaintiffs running

up against a policy or practice of violating FOIA, LUPE's repeated requests for IHP documents hit "prolonged, unexplained delays," *Judicial Watch*, 895 F.3d at 780-782, and "stubborn refusals" to comply with FOIA, *Payne*, 837 F.3d at 492. Like the plaintiff in *Judicial Watch*, only repeat lawsuits have proven even marginally successful. *See* 895 F.3d at 780. And the consistency of FEMA's approach refutes that these violations are the result of "isolated mistakes by agency officials." *Payne*, 837 F.2d at 491. They instead reflect a "persistent failure to adhere to FOIA's requirements." *Judicial Watch*, 895 F.3d at 780.

Moreover, FEMA's entrenched policy gives rise to a "cognizable danger of recurrent violation" warranting injunctive relief. *Judicial Watch*, 895 F.3d at 783 (citation omitted).

*First*, the "character of" FEMA's "violations," *id.*, rings alarm bells. FEMA took over a year to file an administrative record in this case containing some of the records responsive to LUPE's FOIA requests—and those records were so thoroughly redacted as to be useless. *See supra* p. 17. FEMA then produced another *6,000* pages of rules—and removed almost all of the redactions—only after the District Court ordered it to do so. *See supra* p. 19.

The 10,602 pages FEMA produced and published during this litigation is a disorganized mess of rules that it used sometime between 2019 and 2022. *See* ROA.5857-15876. FEMA admits that it published documents that "are not FOIA (a)(2) documents." ROA.16172-73. This only serves to bury the FEMA's IHP standards. *See, e.g.*, *Brown v. Allen*, 344 U.S. 443, 537 (1953) (Jackson, J., concurring in result) ("He who must search a haystack for a needle is likely to end up with the attitude that the needle is not worth the search.").

Moreover, the statutorily required index FEMA included as part of this publication is not "reasonable," as required by FOIA. *Irons & Sears v. Dann*, 606 F.2d 1215, 1223 (D.C. Cir. 1979); *see also* S. Rep. No. 88-1219, 88th Cong., 2d Sess., at 12-13 (July 22, 1964) (The index requirement was designed to "afford the private citizen the essential information to enable him to deal effectively and knowledgeably with the Federal agencies."). Yes, as the District Court noted, the index is "publicly accessible in electronic form" and purports to "categorize[] documents by type and provides a brief, descriptive title." ROA.16215-16. But, in reality, those titles provide next-to-no guidance to anyone trying to make reasonable use of FEMA's disaster-assistance standards.

*See* ROA.16162-16165. FEMA's index also does not distinguish between current and obsolete IHP rules. *Id.*; *see Pennsylvania Dep't of Pub. Welfare v. United States*, No. 99-175, 2001 U.S. Dist. LEXIS 3492, at \*82 (W.D. Pa. Feb. 7, 2001) (stating that Section 552(a)(2) index is deficient when it is "nearly impossible" to distinguish precedential material from obsolete material).

Providing guidance to the public is not rocket science; other federal agencies that administer programs every bit as complex as the IHP publish their rules using indexes that actually make the rules accessible.[7] Congress could not have intended that agencies publish their rules, only to permit agencies to do so in ways that make the rules practically unusable. *See Church of Scientology of Cal. v. IRS*, 792 F.2d 153, 159 (D.C. Cir. 1986) (recognizing that an index helps prevent agency use of secret law).

---

[7] *See, e.g.*, Social Security Administration, Program Operations Manual System (POMS), https://secure.ssa.gov/apps10/ (visited April 1, 2025); Immigration and Customs Enforcement, FOIA ICE Library, https://www.ice.gov/foia/library (visited April 1, 2025); Dept of Veterans Affairs, FOIA Library, https://department.va.gov/foia/foia-library/ (visited April 1, 2025).

*Second*, LUPE faces a "cognizable danger of a recurrent violation" because FEMA has not "discontinu[ed]" its practice of refusing to publish its IHP standards. *Judicial Watch*, 895 F.3d at 783. The most FEMA has done is publish a tranche of IHP rules and guidance in place from 2019 to 2022. But LUPE's policy-or-practice claim concerns FEMA's failure to publish its IHP standards on an *ongoing basis*. That aspect of LUPE's case flows from Section 552(a)(2)'s text, which requires that agencies proactively disclose certain documents *before* they "are relied on[ or] used." 5 U.S.C. § 552(a)(2); *Jordan v. DOJ*, 591 F.2d 753, 756 (D.C. Cir. 1978) (en banc) (Section 552(a)(2) records must be made "automatically available for public inspection; no demand is necessary"); *see also supra* pp. 7-8.[8]

---

[8] FEMA argued below that it "fully responded" to LUPE's Section 552(a)(2) request by producing the IHP rules that FEMA used between 2019 and 2022. *See, e.g.*, ROA.15899, 16172, 16193. This argument is yet another red flag that FEMA has no intention of ceasing its practice of violating that provision. Although FEMA's production may have adhered to the cut-off dates in the District Court's Docket Control Order—which were designed to keep the case moving until the ongoing-publication issue could be addressed at mediation, evidentiary hearing, or summary judgment briefing—adhering to historical cut-off dates can in no way satisfy Section 552(a)(2)'s proactive, ongoing obligations. That FEMA argued its forward-looking duties are satisfied by a backwards-looking production indicate that it has no intention of abiding by Section 552(a)(2) in the future.

FEMA has not published its IHP rules on an ongoing basis since January 2022.  IHP assistance has been made available in dozens of disasters since January 2022.  *See* ROA.15978 (in January 2024, observing that there have been "at least 39 major disasters since January 19, 2022," where IHP was activated); ROA.16144-51 (collecting nine FEMA IHP announcements); *see also, e.g.*, 89 Fed. Reg. 97,052 (Dec. 6, 2024) (North Carolina floods); 89 Fed. Reg. 64,945 (Aug. 8, 2024) (Texas hurricane); Press Release, *President Joseph R. Biden, Jr. Approves Major Disaster Declaration for California*, FEMA, HQ-25-08 (Jan. 8, 2025) (California wildfires).[9]  And FEMA uses some incident-specific rules following each disaster.  ROA.15978, 16030-38, 16048-54; *see also supra* pp. 20-21.  FEMA's website, however, remains stale.  FEMA updated it in January 2024 with the IHP rules that it used through January 2022 in support of its motion for summary judgment.  ROA.15894.  And although FEMA updated only once again in March 2025, that update adds only a few materials limited to two of the dozens of disasters occurring between January 2024 and March 2025.  *See* FEMA, *FEMA*

---

[9] *Available at* https://perma.cc/4QBV-PAAW.

*Frequently Requested Records*, https://www.dhs.gov/publication/fema-records (last visited Apr. 2, 2025).[10]

There is more. FEMA conceded below that "[n]ot all records that were searched for and located pursuant to" LUPE's FOIA "request have been updated after January 19, 2022," ROA.16191—meaning that *some* of these records *have* been updated without publication. Yet when LUPE moved for summary judgment, FEMA came forward with *no evidence* that it was complying with Section 552(a)(2) after January 2022. This absence of evidence of compliance is fatal. Under FOIA, "the burden is on [FEMA] to sustain its action." 5 U.S.C. § 552(a)(4)(B). And "when the nonmovant has the burden of proof at trial," the party moving for summary judgment may "shift[] the summary judgment burden to the nonmovant[] with an allegation that the nonmovant has failed to establish an element essential to that party's case." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). FEMA's failure to produce

---

[10] This Court can take judicial notice of FEMA's failure to update its online reading room. *See United States v. Bari*, 599 F.3d 176, 180 (2d Cir. 2010) (upholding judicial notice where "a judge need only take a few moments to confirm [her] intuition by conducting a basic Internet search"); *Huskey v. Jones*, 45 F.4th 827, 831 n.3 (5th Cir. 2022) ("This court has upheld taking judicial notice of the contents of a state agency's website and we do so again here.").

evidence of compliance with Section 552(a)(2) means that it has failed to carry its burden.

*Third*, FEMA has offered no "*bona fide*[] … intent to comply" with FOIA moving forward. *Judicial Watch*, 895 F.3d at 783. The most FEMA has done is offer a declaration from the Chief of the Disclosure Branch representing that "FEMA currently complies with 5 U.S.C. § 552(a)(2) by proactively making available, in an electronic format," the required documents, and that it "will continue to comply" with that provision by publishing newly created documents "as they are created." ROA.16191-92.

This "weak assurance" is not enough. *Payne*, 837 F.2d at 492. For one thing, at the time FEMA made this declaration—February 2024—FEMA was *not* complying with Section 552(a)(2). Nor had it been previously. FEMA's insistence that it complies with this provision—despite producing thousands of documents that *should have already been published* and continuing to refuse to publish documents before they are used in subsequent disasters—undermines its pledge. At the least, FEMA's lack of explanation for its historical failure to publish these rules before using them raises significant doubts about its promise to comply

38

in the future.  *See, e.g., Judicial Watch*, 895 F.3d at 780 ("unexplained delays" indicate policy or practice).

For another, FEMA's promise to publish these documents "as they are created" does not track with its actions.  Again, FEMA has failed to consistently publish new disaster-specific IHP documents to its reading room before using them since making this promise.  This is unsurprising; FEMA also failed to live up to its promise to the D.C. Circuit to comply with Section 552(a)(3).  *See supra* pp. 37-38.

*Finally*—and most importantly—FEMA's entrenched policy significantly harms the public.  *See Judicial Watch*, 895 F.3d at 783. FEMA requires written appeals stating why IHP decisions are challenged, and "sufficient justification" for FEMA to reconsider its eligibility determination, within 60 days of an adverse decision.  44 C.F.R. § 206.115(a)-(b); 89 Fed. Reg. 3,990, 3,999 (Mar. 22, 2024).  FEMA decisions on appeal are "final," 44 C.F.R. § 206.115(e), and arguably unreviewable, *see* 42 U.S.C. § 5148.  But FEMA's policy prevents survivors from taking an effective appeal:  A survivor cannot effectively appeal if she does not know what standards FEMA used.  *See, e.g.*, *Barbosa*, 916 F.3d at 1073; *Ridgely*, 512 F.3d at 741. Disaster survivors

thus still must navigate the labyrinthine IHP application process without knowing the standards against which their applications are judged. This adverse effect on the public is "the court's prime consideration" in determining whether to enjoin a policy or practice. *Judicial Watch*, 895 F.3d at 783; *see also infra* pp.57-65 (discussing harm to LUPE and the public).

### C.    The District Court Erred In Holding Otherwise.

The District Court held that LUPE's policy-or-practice claim does "not survive summary judgment" because "LUPE has failed to establish that FEMA has a policy or practice of violating FOIA." ROA.16218. The court's analysis does not withstand scrutiny.[11]

The court pointed to FEMA's statement that it is committed "to reviewing future documents as they are created." ROA.16219. That

---

[11] The District Court resolved *both* cross motions for summary judgment by relying on its conclusion that *LUPE* failed to establish a policy or practice.. *See* ROA.16218-20 (FEMA's motion); ROA.16222 (LUPE's motion). But as to its summary-judgment motion, *FEMA* bears the burden of establishing its compliance with FOIA. *See supra* pp. 37-38. The court appears to have improperly shifted the burden to LUPE. *See Judicial Watch*, 895 F.3d at 782. In any event, whether viewed from the vantage point of FEMA's motion or LUPE's motion, the record establishes that FEMA has a policy or practice of violating FOIA.

pledge is inadequate for all the reasons already discussed. *See supra* pp. 37-38.

The court next stated that "LUPE has stipulated that FEMA's disclosures were adequate." ROA.16219. That is not quite right. LUPE agreed only that FEMA produced the IHP rules that it used between January 2019 and January 2022, and nothing more. *See* ROA.5851, 15885. But that in no way absolves FEMA of its duty to *continue* to produce and publish the required documents.

The court also afforded FEMA the presumption that government defendants "adhere to the law declared by the court." ROA.16219. But a presumption is exactly that, and it is overcome in this case. *See supra* pp. 22-23.

Finally, the court held that the past violations underpinning LUPE's policy-or-practice claim are "unconnected" and "unique." ROA.16220. But FOIA violations are related for purposes of a policy-or-practice claim when they "relat[e] to the same subject matter." *Judicial Watch*, 895 F.3d at 782. LUPE clears that low bar.

The FOIA request at issue here seeks "all records that communicate to any FEMA employee or any FEMA contractor … any substantive or

procedural standard that is or will be used by FEMA, FEMA contractors, or FEMA subcontractors to help decide any application for assistance under" IHP "following a disaster declared after January 1, 2019." ROA.31. That is almost word-for-word what LUPE requested in its previous *sixteen* requests to FEMA—all of which concerned the same disasters covered by LUPE's later request. *See* ROA.15979-16026. Those sixteen requests, in turn, followed two lawsuits filed by LUPE that, as FEMA repeatedly concedes, "involv[ed] many of the issues involved in this case." ROA.4555-56, 5507-09. All of LUPE's FOIA requests and lawsuits share the identical goal: notice of FEMA's IHP standards in time to effectively appeal. And the fact that FEMA ran the same playbook when faced with each of these requests confirms that they are related for purposes of proving that FEMA has a policy-or-practice of resisting timely disclosure of its IHP standards regardless of FOIA.

In any event, even if the District Court were right to focus on the "delay in this case" alone, ROA.16220, that delay evidences a policy or practice. Again, this case concerns Section 552(a)(2), which requires that agencies proactively publish certain documents before using them. The "delay in this case" thus involves FEMA failing to publish the IHP

standards it used during *each* of the many disasters following January 1, 2019. If that is not a policy or practice, it is difficult to see what is.

## II. FOIA'S REMEDIAL PROVISION AUTHORIZES COURTS TO ORDER AGENCIES TO PROACTIVELY POST DOCUMENTS ONLINE.

If this Court concludes that FEMA has a policy or practice of violating FOIA, it should also hold that the District Court has authority under FOIA's remedial provision, 5 U.S.C. § 552(a)(4)(B), to enter an injunction ordering FEMA to timely publish its IHP standards online with an index that facilitates reasonable public access.

As the District Court recognized, this Court has yet to address the scope of remedial relief available under Section 552(a)(4)(B). ROA.16221. Three other Circuits have, but with mixed results. The Second and Ninth Circuits hold that FOIA's remedial provision authorizes courts to order agencies to proactively post documents to online reading rooms. *See NYLAG*, 987 F.3d at 215 (2d Cir.); *ALDF*, 935 F.3d at 877 (9th Cir.). The D.C. Circuit, in contrast, holds that courts *cannot* order such public posting, and instead can only order agencies to provide the requested documents "to the [FOIA] complainant." *CREW*, 836 F.3d at 1244.

Although the District Court did not reach this issue, it indicated that it agrees with the Second and Ninth Circuits. *See* ROA.16221.

If this Court reverses the District Court's policy-or-practice holding, it should also hold that Section 552(a)(4)(B) authorizes courts to order agencies to proactively post documents online. *See In re Mirant Corp.*, 378 F.3d 511, 522 (5th Cir. 2004) (addressing whether the lower court had authority to enter injunctive relief in the "interest of judicial efficiency and to provide guidance on remand"). This is a pure question of law, was fully briefed below, and is entangled with the merits. The District Court has already indicated that it agrees with LUPE on this issue. ROA.16221 n.6. And, as the District Court lamented, this case has "languished" long enough. ROA.5593. Remanding for yet another round of briefing on this issue, which will be subject to another appeal, is inefficient. *See Glass v. Paxton*, 900 F.3d 233, 243 (5th Cir. 2018) ("When the only remaining issues are purely legal questions that were briefed below, we have been willing to resolve those issues on appeal to avoid a waste of judicial resources."). Further delay compromises FOIA's demand for transparency and jeopardizes disaster survivors' opportunity to obtain relief within the single 60-day window to appeal adverse

decisions. *See Board of Pub. Instruction of Taylor Cnty., Fla. v. Finch,* 414 F.2d 1068, 1072-73 (5th Cir. 1969) (collecting cases where issues not passed upon below were decided on appeal to prevent injustice from agency disobedience of statutes). This Court should accordingly decide this important issue.

### A. The Text, Structure, And Purpose of FOIA's Remedial Provision Make Clear That District Courts Can Order Agencies To Proactively Post Documents Online.

#### 1. The Remedial Provision's Text Authorizes Orders Requiring Agencies To Proactively Post Documents Online.

Statutory interpretation of FOIA, as with every statute, "starts with its text." *Milner v. Department of the Navy*, 562 U.S. 562, 569 (2011). As relevant here, FOIA's remedial provision states that "the district court has … jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). The conjunctive "and" demonstrates that this provision gives courts two distinct types of authority: (1) to enjoin agencies from withholding records, and (2) to order the production of records improperly withheld from the complainant. *See, e.g., And*, Random House Dictionary of the English Language 55 (1st ed. 1971) ("added to; in addition to; besides; also;

45

moreover"); *NYLAG*, 987 F.3d at 217 (explaining " 'and' is typically used for 'linking independent ideas' ") (quoting *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 226 (2011)); 73 Am. Jur. 2d Statutes § 139 ("The ordinary and usual usage of the statutory term 'and' is as a conjunctive, meaning 'an additional thing,' 'also,' or 'plus.' ").

The ordinary meaning of the enjoin-from-withholding clause authorizes courts to order agencies to comply with Section 552(a)(2) by proactively posting documents to an online reading room. To "withhold" means "to hold back" and "keep from action." Webster's Third New International Dictionary 2627 (1971 ed.); *accord, e.g.*, Random House Dictionary of the English Language 1640 (1st ed. 1971) ("to hold back"). An agency can "withhold[] ... records" by holding back from publicly posting those documents to a reading room, as required by Section 552(a)(2). *See NYLAG*, 987 F.3d at 219.

Moreover, the remedial provision uses the present participle: "withhold*ing*." *Carr v. United States*, 560 U.S. 438, 448 (2010) ("Consistent with normal usage, we have frequently looked to Congress' choice of verb tense to ascertain a statute's temporal reach."). That tense refers to ongoing action. *See, e.g.*, *D.L. Markham DDS, MSD, Inc. 401(K)*

*Plan v. Variable Annuity Life Ins. Co.*, 88 F.4th 602, 610 (5th Cir. 2023) (defining present participle "providing" to mean "a person who is *currently* providing" services). And because the present participle is a variant of the present tense, it "include[s] the future as well as the present." 1 U.S.C. § 1. An agency can thus be "withholding … records" when it fails to proactively post them an ongoing basis, as required by Section 552(a)(2).

The remedial provision authorizes courts "to enjoin" this behavior. 5 U.S.C. § 552(a)(4)(B). "[T]o enjoin" means to "require" or "command" a person "to perform, or to abstain or desist from, some act." Black's Law Dictionary (4th ed. rev. 1968). This authority naturally empowers courts to enter "equitable *prospective* relief." *ALDF*, 935 F.3d at 870 n.13 (emphasis added). After all, injunctions are forward-looking *See, e.g.*, *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 59 (1987).

Putting this all together, "the words 'to enjoin the agency from withholding agency records' … mean what they say: FOIA authorizes district courts to stop the agency from holding back records it has a duty to make available, which includes requiring an agency to post § 552(a)(2)

documents online." *ALDF*, 935 F.3d at 869; *accord NYLAG*, 987 F.3d at

215. That perfectly describes the relief LUPE seeks.

> ## 2. Context Indicates That The Remedial Provision Authorizes Orders Requiring Agencies To Proactively Post Documents Online.

Two additional aspects of the remedial provision's text and context

make clear that it authorizes courts to issue LUPE's requested relief.

First, reading the enjoin-from-withholding clause to authorize the

proactive posting of documents avoids surplusage. *Kungys v. United*

*States*, 485 U.S. 759, 778 (1988) (Scalia, J., plurality op.) (explaining "the

cardinal rule of statutory interpretation that no provision should be

construed to be entirely redundant"). If courts could *not* order compliance

with Section 552(a)(2) by requiring agencies to post documents online and

instead could order agencies only to disclose the documents to the

complainant, that first clause would be meaningless. *See ALDF*, 935 F.3d

at 870; *accord NYLAG*, 987 F.3d at 217. The court's responsibility to

"give effect, if possible, to every clause and word of a statute," *Bennett v.*

*Spear*, 520 U.S. 154, 173 (1997) (citation omitted), here requires that "the

first clause [be] read as providing a remedy distinct from that authorized

by the second clause," *NYLAG*, 987 F.3d at 218.

Second, the full context of the remedial provision makes clear that the enjoin-from-withholding clause allows courts to order agencies to proactively post documents online. *See Seago v. O'Malley*, 91 F.4th 386, 392 (5th Cir. 2024) (statutory terms "must be understood in the context of the phrase in which it appears"). In addition to granting courts jurisdiction to issue injunctions, the remedial provision directs courts to give certain "matters … substantial weight." 5 U.S.C. § 552(a)(4)(B). These matters include "an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C)," *id.*— i.e., an affidavit on the feasibility of indicating a "deletion" from a "record" posted online under Section 552(a)(2). By directing courts to weigh affidavits relating to the online posting of records under Section 552(a)(2), Congress clearly "contemplated judicial orders" to require the online posting of records. *NYLAG*, 987 F.3d at 220.

### 3. FOIA's Structure Confirms That Courts May Order Agencies To Proactively Post Documents Online.

Statutory interpretation also requires "a careful examination of the … structure of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019). FOIA distinguishes between documents

that must be proactively disclosed to the public—Sections 552(a)(1) and (a)(2)—and documents that must be produced upon request—Section 552(a)(3). *See supra* pp. 6-8. This proactive-versus-reactive dichotomy neatly tracks the dual authority granted by the remedial provision. *See ALDF*, 935 F.3d at 870. Ordering compliance with Section 552(a)(2)'s proactive obligations is naturally covered by FOIA's authority "to enjoin an agency from withholding … records." *See supra* p. 47. And ordering compliance with Section 552(a)(3)'s reactive obligation is naturally covered by the grant of jurisdiction "to order the production of any agency records improperly *withheld from the complainant*." 5 U.S.C. § 552(a)(4)(B) (emphasis added).

But reading the remedial provision to be limited to ordering the production of documents to the requester "collapses an agency's affirmative responsibility to post certain records … into an agency's responsibility to respond to requests for copies of documents under § 552(a)(3)." *ALDF*, 935 F.3d at 872. This would "render the proactive disclosure requirements in the first two paragraphs merely precatory." *NYLAG*, 987 F.3d at 220. Congress cannot have intended to remedy Section 552(a)(2) violations by "forc[ing] plaintiffs right back into the

requests and backlogs Congress sought to avoid in the first place." *ALDF*, 935 F.3d at 872.  Indeed, such an interpretation is nonsensical:  Section 552(a)(3) does not apply to "records made available under [Section 552(a)](1) and (2)." 5 U.S.C. § 552(a)(3).

In fact, the remedial provision's evolution highlights that Congress intended to authorize remedies for Section 552(a)(2) violations that are distinct from remedies for Section 552(a)(3) violations.  *See NYLAG*, 987 F.3d at 221-223.  The remedial provision was originally part of Section 552(a)(3), which led the Government to argue that FOIA authorized judicial review and redress only for Section 552(a)(3) violations.  *See* S. Rep. No. 93-854, 93d Cong., 2d Sess., at 9 (May 16, 1974).  Congress disagreed.  In 1974, Congress amended FOIA to move the remedial provision to a separate paragraph to emphasize its intent "that the judicial review provisions apply to requests for information under" Sections 552(a)(1), (a)(2), *and* (a)(3).  *Id.*; *accord* 5 U.S.C. § 552(a)(6)(A).

Courts must give this amendment "real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995).  If the only remedy available for a Section 552(a)(2) violation was an order directing the agency "to produce the documents to the complainant, then Congress would not

have needed to clarify that judicial review was available for all three subsections." *NYLAG*, 987 F.3d at 222-223. A plaintiff could instead have sought production under Section 552(a)(3) of the documents required to be published under Section 552(a)(2), and then "pursue[d] judicial enforcement of that request if the agency denied it." *Id.* at 223. Construing the remedial provision to broadly authorize orders requiring the posting of documents avoids rendering this amendment "an exercise in futility." *Pierce Cnty., Wash. v. Guillen*, 537 U.S. 129, 145 (2003).

> **4. Concluding That Courts Are Authorized To Order Agencies To Proactively Post Documents Online Is Consistent With FOIA's Purpose.**

Courts sitting in equity have plenary discretion "unless a statute clearly provides otherwise." *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 496 (2001). And in FOIA, as the Supreme Court has recognized, "there is little to suggest … that Congress sought to limit the inherent powers of an equity court." *Renegotiation Bd. v. Bannercraft Clothing Co.,* 415 U.S. 1, 20 (1974); *see also, e.g.*, *Payne*, 837 F.2d at 494 ("The FOIA imposes no limits on courts' equitable powers in enforcing its terms."); *Lewis v. Reagan,* 660 F.2d 124, 128 (5th Cir. 1981) (recognizing broad grant of equitable jurisdiction). "The essence of a court's equity

power lies in its inherent capacity to adjust remedies in a feasible and practical way to eliminate the conditions or redress the injuries caused by unlawful action." *Freeman v. Pitts*, 503 U.S. 467, 487 (1992). Moreover, "[w]hen federal law is at issue and 'the public interest is involved,' a federal court's 'equitable powers assume an even broader and more flexible character than when only a private controversy is at stake.'" *Kansas v. Nebraska*, 574 U.S. 445, 456 (2015) (citations omitted).

LUPE's requested relief is well within the remedial provision's broad grant of equitable authority. FEMA is violating Section 552(a)(2) by using secret rules to determine IHP assistance without first posting those documents online. A "feasible and practical way" to address this ongoing violation, *Freeman*, 503 U.S. at 487, is by issuing a prospective injunction ordering FEMA to post those documents online before using them.

Reading the remedial provision to authorize this relief also vindicates FOIA's purpose. Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Department of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)

(quotation marks omitted). Section 552(a)(2) in particular was meant to "eliminat[e] … secret law." *Reporters Comm. for Freedom of Press*, 489 U.S. at 772 n.20 (citation and quotation marks omitted). To effectuate this goal, Congress enlisted the federal courts as "the enforcement arm of the statute." *Bannercraft*, 451 U.S. at 19. The courts thus have "the responsibility of ensuring the fullest responsible disclosure." *ALDF*, 935 F.3d at 873.

## B.    FEMA's Contrary Arguments Are Meritless.

FEMA's argument below rested on two cases. The first is *CREW*, which held "that the only available remedy" for Section 552(a)(2) violations "is to order … produc[tion] to the requester." ROA.4559. The second is *Humane Society*, which held that courts cannot issue injunctions covering documents not yet created. 838 F. App'x at 732. Both opinions are unpersuasive.

As both the Second and Ninth Circuits have recognized, *CREW* is off the mark. *See ALDF*, 935 F.3d at 874; *NYLAG*, 987 F.3d at 213-215. Both parties in *CREW* "narrowly construed" the remedial provision to extend only to "disclosure[s] to a plaintiff of extant documents in response to a specific request." 836 F.3d at 1241. Moreover, the court did not parse

the provision's text at all, instead relying on circuit precedent that *itself* did not grapple with the remedial provision's text, structure, and purpose. *See id.* at 1243 (applying *Kennecott Utah Copper Corp. v. United States Dep't of Interior*, 88 F.3d 1191, 1203 (D.C. Cir. 1996)). That case, *Kennecott*, did not even address the enjoin-from-withholding clause at issue here.

The Fourth Circuit's unpublished, non-binding, per curiam opinion in *Humane Society* fares no better. The court's holding that "FOIA did not entitle" plaintiffs to "prospective relief … as to documents not yet in existence" is unsupported by any reasoned textual analysis. The court simply quotes the district court's conclusion that the remedial provision's "language … refer[s] to information that already exists." 838 F. App'x at 731. But the text says no such thing. *See supra* p. 26. The court also anchored its holding in *ALDF*, which the Fourth Circuit read to "deal with *existing* agency records[,] … not nebulous records that have not yet come to fruition." 838 Fed. App'x at 732. That is also wrong. The plaintiffs in *ALDF* sought an order requiring the agency to make "the records publicly available in an electronic format *on an ongoing basis.*" 935 F.3d at 865 (emphasis added). And the Ninth Circuit "conclude[d]

that FOIA authorizes district courts to provide the relief Plaintiffs request." *Id.* at 877. Finally, *Humane Society* clashes with *NYLAG*, whose holding expressly covers "future" documents required to be published under Section 552(a)(2). 987 F.3d at 209.

## III. AN INJUNCTION IS WARRANTED.

Finally, if this Court concludes that there is no genuine dispute that FEMA has a policy or practice of violating FOIA and that the District Court has authority to redress that violation by entering an injunction ordering the agency to proactively post IHP documents to its reading room, this Court should also conclude that there is no genuine dispute that an injunction is warranted here. Injunctive relief is available when a plaintiff demonstrates "(1) that it has suffered an irreparable injury;" (2) that it lacks an adequate remedy at law; (3) that the balance of the hardships favors an injunction; "and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The final two factors " 'merge when the

Government is the opposing party.'" *Clarke v. CFTC*, 74 F.4th 627, 643 (5th Cir. 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

The District Court did not address these factors. *See* ROA.16222-16223. But the factors were fully briefed, ROA.15941-46, 16180-87, and there is no genuine dispute that they favor an injunction. This Court should accordingly address them for the same reasons it should clarify the scope of the remedial provision. *See supra* pp. 43-45. This Court should then hold that injunctive relief is warranted, and remand for a determination of what specific relief is necessary to achieve compliance.

## A. LUPE Is Suffering Several Irreparable Injuries That Cannot Be Adequately Remedied At Law.

"A showing of irreparable harm requires a demonstration of 'harm for which there is no adequate remedy at law.'" *Louisiana v. Biden*, 55 F.4th 1017, 1033-34 (5th Cir. 2022) (citation omitted). When a plaintiff seeks an injunction "because of the defendant's violation of a statute," the plaintiff need only show that it "will suffer harm which cannot be repaired." *Studebaker Corp. v. Gittlin*, 360 F.2d 692, 698 (2d Cir. 1966) (Friendly, J.). After all, "the only consequence of [such] an injunction is that the defendant must effect a compliance with the statute which he

ought to have done before." *Id.* Here, there is no genuine dispute that LUPE is suffering harm that cannot be adequately remedied at law.

### 1.    LUPE Is Irreparably Harmed In Four Ways.

*First*, LUPE is irreparably harmed because FEMA's violations deprive it of access to information. A plaintiff suffers an "informational injury" when it " 'fails to obtain information which must be publicly disclosed pursuant to a statute.' " *Center for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 429-430 (5th Cir. 2013) (*quoting FEC v. Akins*, 524 U.S. 11, 21 (1998)); *see ALDF*, 935 F.3d at 867 ("Informational injuries remain firmly embedded in both Supreme Court and circuit cases."). An informational injury exists when an "agency decides not to post records qualifying for § 552(a)(2) treatment, or when a plaintiff visits the online reading room and information required to be there is nowhere to be found." *ALDF*, 935 F.3d at 867-868.

LUPE has suffered, and will continue to suffer, this harm. As LUPE's leadership explained in sworn declarations, "[t]o serve its membership, LUPE often needs access to the government information that is required to be published by law." ROA.15952. But when "LUPE and its agents visit FEMA's websites[,] … the standards that are

published there are so vague or disorganized or incomplete as to be of almost no use." ROA.15949. That is textbook informational injury.

*Second*, LUPE is irreparably harmed because FEMA's violations hinder LUPE's ability to pursue its mission of advocating for fair distribution of disaster assistance. Courts uniformly recognize that a plaintiff is irreparably harmed when an agency deprives it of information necessary to engage in ongoing public debates over important issues. *See, e.g.*, *Electronic Frontier Found. v. Office of Dir. of Nat. Intel.*, No. 07-cv-5278, 2007 WL 4208311, at *7 (N.D. Cal. Nov. 27, 2007) ("Irreparable harm can exist in FOIA cases [where information is relevant to] ongoing public and congressional debates about issues of vital national importance [that] cannot be restarted or wound back." (quotation marks omitted)); *Electronic Priv. Info. Ctr. v. DOJ*, 416 F. Supp. 2d 30, 41 (D.D.C. 2006) (finding irreparable harm where agency's failure to release information in a timely way stymied "meaningful debate about the warrantless surveillance program"); *Stevens v. HHS*, 666 F. Supp. 3d 734, 746 (N.D. Ill. 2023) (journalist was irreparably harmed where failing to

provide documents on an expedited basis would hinder ability "to timely inform the public" about the issue).

The issue of fairness in disaster assistance is of current and broad public concern. *See, e.g.*, Zach Schonfeld, The Hill, *Florida Alleges FEMA Officials Conspired To Discriminate Against Trump Supporters After Hurricane* (Nov. 14, 2024);[12] *see also* ROA.16061-16143 (widespread press coverage concerning fairness in disaster assistance); *News-Press v. DHS*, 489 F.3d 1173, 1181 (11th Cir. 2007) (detailing "concerns" related to FEMA's aid distribution shared by the media, "federal, state, and local officials, as well as by the public at large"). LUPE's capacity to participate in this debate is irreparably hindered by being deprived of access to the rules that FEMA uses to make its IHP decisions. *See* ROA.15949 (LUPE's mission includes "organiz[ing] against any discrimination found in disaster assistance distribution"); ROA.15958 ("LUPE wants the information required by law to be published now, so

---

[12] *Available at* https://thehill.com/homenews/4990582-florida-sues-fema-director-trump-supporters/ (visited April 1, 2025).

that LUPE can do its routine work of helping to facilitate communication between the agency and the public that the agency is supposed to serve.").

*Third*, LUPE is irreparably harmed because FEMA's violations prevent LUPE from "help[ing] community members appeal FEMA denials within the 60-day appeal deadline." ROA.15949. As the D.C. Circuit recognized, "[i]t is certainly difficult to muster an effective appeal if one is ignorant of the grounds upon which a claim is denied." *Barbosa*, 916 F.3d at 1073; *accord Ridgely*, 512 F.3d at 741 ("Until a disappointed applicant is informed of the reasons that FEMA believes him to be ineligible for assistance, including the factual basis underlying that decision, he simply has no way to 'test the veracity of the agency's findings against him.' "). Between 2010 and 2021, eight major disasters hit counties where LUPE's members reside. *See* ROA.15948. Unless FEMA achieves compliance with Section 552(a)(2) before the next disaster, LUPE will once again be limited in its capacity to protect its members and the communities it strives to serve. *See* ROA.15948, 15957-58.

*Finally*, LUPE is irreparably harmed because FEMA's violations require LUPE to engage in time-consuming and costly litigation. *See*

ROA.15949-51 (discussing LUPE's litigation costs and how LUPE's "need for immediate access to all of FEMA's disaster assistance standards … will remain indefinitely"); *cf. Book People, Inc. v. Wong*, 91 F.4th 318, 341 (5th Cir. 2024) ("nonrecoverable compliance costs" are "irreparable harm"). FEMA concedes that it expects LUPE to file *additional* FOIA requests, and then pursue further litigation to remedy any policy or practice of non-compliance. ROA.16185-86. "[M]anaging voluminous FOIA requests costs time and money." *ALDF*, 935 F.3d at 867. And requiring a plaintiff to seek "legal redress" through a "multiplicity of actions" is irreparable harm. *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011); *see also Judicial Watch*, 895 F.3d at 780 (FOIA "litigation costs" unfairly burden requestors, the public, and courts).

There are no adequate remedies at law for these injuries. The typical remedy at law is monetary damages. *See Janvey*, 647 F.3d at 600. But FOIA does not "authorize[] damages awards to requesters for agency non-compliance or misconduct." *Riser v. United States Dep't of State*, No. 09-cv-3273, 2010 WL 4284925, at *2 (S.D. Tex. Oct. 22, 2010). And insofar as LUPE may be able to access the information it seeks by filing additional FOIA requests or engaging in future litigation, "a remedy at

law is inadequate if legal redress may be obtained only by pursuing a multiplicity of actions." *Janvey*, 647 F.3d at 600.

### 2. FEMA Has No Persuasive Argument To The Contrary.

In the District Court, FEMA did not challenge the types of irreparable harm LUPE claimed. FEMA instead argued that LUPE did not provide sufficient evidence to support those claims. ROA.16180. In FEMA's view, the newspaper articles cited by LUPE are "hearsay." ROA.16183. But LUPE cited these articles only to prove what is in the public realm, not to prove the truth of their content. *See* ROA.15914; *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (appellate courts may take judicial notice of news articles to "indicate what was in the public realm at the time"); *Benak ex rel. All. Premier Growth Fund v. Alliance Cap. Mgmt. L.P.*, 435 F.3d 396, 400-401 & n.15 (3d Cir. 2006) (same, collecting cases).

FEMA also argued that LUPE's declarations "are focused on past harms experienced by LUPE and its members." ROA.16184. But those declarations discuss those past harms to show how LUPE is currently injured, and how it will be injured again in the future. *See* ROA.15958 (explaining that FEMA's "lack of information makes LUPE's planning for

the next Hurricane Dolly more expensive and less effective"); ROA.15950 ("LUPE's longstanding interest in and need for immediate access to all of FEMA's disaster assistance standards … will remain indefinitely.").

FEMA also argued in the District Court that LUPE has an adequate remedy at law because LUPE "can request documents under FOIA," "seek expedited consideration of those requests if the circumstances necessitate it," and file yet another lawsuit if FEMA fails to comply with FOIA. ROA.16181-82. This only proves LUPE's point. Putting aside that FEMA has a history of sitting on LUPE's FOIA requests, LUPE should not *have* to request the documents covered by Section 552(a)(2) because FEMA is obligated to *proactively* post its rules. FEMA's request-then-litigation approach foils the whole purpose of FOIA. *See Judicial Watch*, 895 F.3d at 783. And it would allow FEMA to skirt judicial review of its efforts to comply with Section 552(a)(2). *See Tucker v. Gaddis*, 40 F.4th 289, 297 (5th Cir. 2022) (Ho, J., concurring)

("We cannot allow government officials to unilaterally avoid judicial review.").

## B.  The Balance Of Harms And Public Interest Favor An Injunction.

When addressing the balance of harms and the public interest, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Clarke*, 74 F.4th at 643 (quotation marks omitted).  This balance tips firmly in favor of LUPE.

On LUPE's side of the equation, it will be harmed in all the ways just discussed.  *See supra* pp. 57-65.  And the public interest is best served by disclosure.  At the threshold, "[t]he public interest is served when administrative agencies comply with their obligations under the APA," *Clarke*, 74 F.4th at 643-644, and FOIA is part of the APA, *Bannercraft,* 415 U.S. at 14.  Not only that, the Eleventh Circuit has specifically recognized that the public interest in the fair distribution of IHP assistance "is undeniable and powerful." *News-Press*, 489 F.3d at 1196.  Finally, "maintenance of secret law … weigh[s] heavily against the public

interest." *Sterling Drug, Inc. v. FTC*, 450 F.2d 698, 715 (D.C. Cir. 1971) (Bazelon, J., concurring in part).

On the other side of the ledger, FEMA has never argued that it would be harmed by an injunction.  That makes sense, since FEMA would be *helped* by an injunction.  FEMA admits that it aims for consistency in its IHP decisions.  ROA.3410, 4617-18.  Consistency is promoted when all stakeholders know the rules.  ROA.3649; DOJ, Office of Information Policy, *Proactive Disclosure of Non-Exempt Agency Information* (updated Oct. 26, 2022) (proactive disclosure promotes efficiency).[13]  Similarly, public support for FEMA and its mission only improve when the public perceives FEMA's decisions as fair, transparent, and rule-based. ROA.4687, 15058, 15168.  Finally, an injunction ordering compliance with Section 552(a)(2) would reduce the number of individual FOIA requests to which FEMA would otherwise have to respond.  *See ALDF*, 935 F.3d at 868 (explaining that Congress amended Section 552(a)(2) "to reduce the need for individual requests").

As for the public interest, FEMA has argued only that a "follow-the-law" injunction is disfavored.  ROA.16182-16183.  But multiple courts

---

[13] *Available at* https://perma.cc/32RG-EB7R.

have recognized that "courts have a duty to prevent" violations of FOIA, *Payne*, 837 F.2 at 494, and can do so by ordering "prospective injunctive relief," *CREW*, 846 F.3d at 1242.  *See ALDF*, 935 F.3d at 869 (holding that courts have "authority to order an agency to post records in an online reading room"); *accord NYLAG*, 987 F.3d at 224.  After all, courts are "the enforcement arm" of FOIA.  *Bannercraft*, 415 U.S. at 19.  To the extent FEMA is concerned about an overly burdensome injunction, the District Court can craft an injunction that accounts for the "burden on the agency of complying with any such order."  *NYLAG*, 987 F.3d at 225; *accord Louisiana Wildlife Federation, Inc. v. York,* 761 F.2d 1044, 1053 n.52 (5th Cir. 1985) ("the court should tailor its relief to fit each particular case").

## CONCLUSION

For the foregoing reasons, this Court should reverse the judgment below and direct the entry of summary judgment for LUPE. It should also direct the District Court to issue an injunction, and remand for consideration of what injunctive relief is necessary to secure FEMA's compliance with Section 552(a)(2). In the alternative, the Court should reverse and remand for further proceedings below.

Respectfully submitted,

April 2, 2025

/s/ Jessica L. Ellsworth
Jessica L. Ellsworth

Jerome Wesevich
Ana Laurel
TEXAS RIOGRANDE LEGAL AID
1331 Texas Ave.
El Paso, Texas 79901

Michael J. West
Sam Zwingli
HOGAN LOVELLS US LLP
555 Thirteenth St. NW
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
jessica.ellsworth@hoganlovells.com

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,811 words, excluding those parts exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.1.

This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) and Fifth Circuit Rule 32.1 because the brief was prepared in 14-point Century Schoolbook font using Microsoft Word for Microsoft Office 365.

April 2, 2025                          /s/ Jessica L. Ellsworth
                                       Jessica L. Ellsworth

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on April 2, 2025. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Jessica L. Ellsworth
Jessica L. Ellsworth